UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

                                                            :

**WILLIAN ALEXANDER PORTILLO MELARA**,           :

                          Petitioner,      :    **MEMORANDUM DECISION AND ORDER**

                                                :

                 – against –            :    26-CV-1453 (AMD)

                                                :

**HERIBERTO TELLEZ, JUDITH ALMODOVAR, TODD M. LYONS,** and **SECRETARY KRISTI NOEM**,           :

                                         :

                     Respondents.       :

-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On April 26, 2025, U.S. Immigration and Customs Enforcement ("ICE") and Nassau County police arrested and detained the petitioner while he was driving with his family. (ECF No. 1 ¶ 16.) The petitioner is currently detained in the Metropolitan Detention Center ("MDC") in Brooklyn, New York. (*Id.* ¶ 1.) The petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court denies the petition, as explained below.

## BACKGROUND[1]

The petitioner is a native and citizen of El Salvador. (*Id.* ¶ 8.) He entered the United States in 2014 without inspection at an unknown time and place. (*Id.* ¶¶ 8, 14.) He married a United States citizen in 2017 and together they have four children. (*Id.* ¶ 14.) On January 17, 2025, the petitioner was charged with Public Lewdness in violation of New York Penal Law

---

[1] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties' submissions, including exhibits. *See Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *2 n.1 (E.D.N.Y. Oct. 6, 2025); *Munoz Materano v. Arteta*, No. 25-CV-6137, 2025 WL 2630826, at *1 n.1 (S.D.N.Y. Sept. 12, 2025).

§ 245.00 — a misdemeanor — based on a report from two eyewitnesses that he was masturbating in his car near an elementary school. (*Id.* ¶ 15; ECF No. 7 at 8.)[2] He was arrested on January 30, 2025 and arraigned on February 4, 2025. (ECF No. 1 ¶ 15; ECF No. 7 at 7–8.)

On April 1, 2025, ICE issued a Form I-200, "Warrant For Arrest" for the petitioner. (ECF No. 7 at 8.) On April 26, 2025, ICE and Nassau County police arrested the petitioner in Uniondale, New York. (ECF No. 1 ¶¶ 8, 16.)[3] A Nassau County police officer said that there was an ICE warrant for his arrest. (*Id.* ¶ 16.) ICE detained the petitioner pursuant to 8 U.S.C. § 1226(a), took him to 535 Federal Plaza, Central Islip, New York for further processing, then to 26 Federal Plaza, New York, New York, and then to the Orange County Jail. (ECF No. 7 at 8.) That same day, the petitioner was placed in removal proceedings pursuant to 8 U.S.C. § 1229a and was served with a Form I-862, "Notice To Appear" ("NTA") on May 5, 2025. (*Id.*) The petitioner appeared with counsel at a master calendar hearing on May 12, 2025, where he conceded that he was not admitted or paroled into the United States and arrived at a time or place other than as designated by the Attorney General, and the immigration judge ("IJ") sustained removability. (*Id.*)

While he was in custody, the petitioner sought and received a bond hearing on May 14, 2025, pursuant to 8 C.F.R. § 1236. (ECF No. 1 ¶ 17.) The IJ concluded that the petitioner "[f]ailed to demonstrate" that he was not a danger, and denied the request for bond. (*Id.*; ECF No. 1-1.) The plaintiff applied for relief from removal in May 2025. (ECF No. 7 at 9.) The removal proceedings were administratively closed because he could not appear in immigration

---

[2] According to the police report, two witnesses saw the petitioner masturbating in his car; one witness reported the petitioner's conduct to a school security officer, who also saw the petitioner masturbating. (ECF No. 7 at 8 (citing ECF No. 1-3 at 7–9).)

[3] The respondents say the petitioner was arrested on April 25, 2025. (ECF No. 7 at 8.)

court while he was in state custody on the criminal case.  (*Id.*)  The removal proceedings were re-calendared when the petitioner was transferred back to ICE custody in the summer of 2025.  (*Id.*)  The petitioner appeared with counsel on September 3, 2025, and the IJ deemed his application for relief from removal complete and scheduled a merits hearing for October 16, 2025.  (*Id.*)

On September 25, 2025, the petitioner pled guilty in New York state court to Disorderly Conduct, in violation of New York Penal Law § 240.20(7).  (ECF No. 1 ¶ 18.)[4]  He was sentenced to 15 days in jail and a conditional discharge.  (*Id.*)

The merits hearing on the petitioner's application for relief from removal was rescheduled to October 28, 2025, and then to November 25, 2025, when the petitioner and counsel presented evidence for his application for cancellation of removal for non-lawful permanent residents pursuant to INA § 240A(b)(1), 8 U.S.C. § 1229b(b), or in the alternative, voluntary departure pursuant to INA § 240B(b), 8 U.S.C. § 1229c(a).  (*Id.* ¶ 19; ECF No. 7 at 9.)  The IJ denied both requests for relief on November 25, 2025.  (ECF No. 1 ¶ 19.)  The petitioner filed a notice of appeal on December 23, 2025, challenging the denial of his asylum application, cancellation of removal, and related relief.  (*Id.* ¶ 19.)[5]

On February 3, 2026, the petitioner was transferred to the MDC.  (ECF No. 7 at 9.)  He filed a petition for a writ of habeas corpus on February 20, 2026, seeking, among other things, a bond hearing at which the government had the burden to show dangerousness and flight risk by clear and convincing evidence.  (ECF No. 1 ¶ 20 (citing *Portillo Melara v. Tellez*, No. 26-CV-

---

[4] The petitioner was charged with Public Lewdness in violation of New York Penal Law § 245.00, a misdemeanor, which provides that "[a] person is guilty of public lewdness when he or she intentionally exposes the private or intimate parts of his or her body in a lewd manner or commits any other lewd act."  He pled guilty to a violation — Disorderly Conduct in violation of § 240.20(7) — which makes it illegal to "create a hazardous or physically offensive condition by any act which serves no legitimate purpose."  N.Y.P.L. § 240.20(7) (2014).

[5] The appeal was still pending when the petitioner filed this petition.  (ECF No. 1 ¶ 19.)

1017, ECF No. 1)).)  On March 3, 2026, the parties filed a joint stipulation for a new bond hearing at which the government would have the burden and dismissal of the petition without prejudice.  (*Id.* (citing *Portillo Melara v. Tellez*, No. 26-CV-1017, ECF No. 15).)  The second bond hearing took place on March 11, 2026.  (*Id.* ¶ 21.)  The IJ denied bond based on dangerousness and did not address flight risk.  (*Id.*; ECF No. 1-2.)  The IJ relied on the police incident report for the public lewdness charge, and the government submitted a press release from the Nassau County Police Department about the petitioner's arrest for "exposing himself." (ECF No. 1 ¶ 22; ECF No. 1-3.)  The IJ concluded that the government had "met its burden of proof by clear and convincing evidence" that the petitioner was a danger to the community based on the witnesses' statements that led to the petitioner's arrest for public lewdness.  (ECF No. 7 at 10; ECF No. 7-9 at 210–248.)

On March 12, 2026, the petitioner filed this petition for a writ of habeas corpus.  (ECF No. 1.)  He argues that the IJ erred as a matter of law in denying bond because the "government could not as a matter of law meet its burden to show clear and convincing evidence of dangerousness based solely on unproven allegations that did not result in conviction."  (*Id.* ¶ 35.) He also says that his detention for "nearly eleven months, without the requisite proof of dangerousness by the government, is unreasonably prolonged and therefore, unconstitutional." (*Id.* ¶ 39.)  The petitioner seeks (1) immediate release or, in the alternative, an order directing the government to provide him with a constitutionally adequate bond hearing within seven days and order the petitioner's release "on conditions the Court deems just and proper;" (2) return of his property upon release from immigration custody; and (3) attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.  (*Id.* at 13.)  The government argues that the Court does not have jurisdiction to review the IJ's bond decision, that the petitioner has not

exhausted his administrative remedies, and that the IJ's decision did not violate the petitioner's constitutional rights.  (ECF No. 7.)  On April 14, 2026, the Court held oral argument on the petition.  (*ECF Minute Entry dated Apr. 14, 2026.*)

## LEGAL STANDARD

A petition for a writ of habeas corpus under Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention."  *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

## I.        Statutory and Regulatory Framework

Pursuant to 8 U.S.C. § 1226(a), "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  "[P]ending such decision," the government "may release the alien on — bond" subject to certain conditions.  8 U.S.C. § 1226(a)(2)(A).  A noncitizen seeking release on bond under § 1226(a) "must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8).  In *Velasco Lopez v. Decker*, the Second Circuit held that Velasco Lopez's "prolonged incarceration, which had continued for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process," and that a bond hearing where the government bears the burden to justify continued detention "appropriately addressed

the violation." 978 F.3d 842, 855 (2d Cir. 2020). Thus, a noncitizen detained pursuant to § 1226(a) is entitled to a bond hearing where the government has the burden to show by clear and convincing evidence that the noncitizen is a danger to the community or a flight risk. *Id.* If an IJ denies bond, the noncitizen may appeal to the BIA. 8 C.F.R. § 236.1(d)(3).

## II.     Jurisdiction to Review Bond Denial

The government asserts that the Court does not have jurisdiction to review the IJ's decision to deny bond. (ECF No. 7 at 11–14.) The government cites 8 U.S.C. § 1226(e), which provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

(*Id.* at 11.) According to the government, Section 1226(e) "'specifically divests this Court of jurisdiction to review the decisions of the IJ' at a bond hearing where the alien 'asks the Court to review the weight that the IJ . . . assigned the evidence,'" because "an 'IJ's decision to consider evidence and weigh its value [is] discretionary.'" (*Id.* (citing *Hamilton v. Shanahan*, 2009 WL 5173927, at *3 (S.D.N.Y. Dec. 30, 2009) and *Lantigua v. Decker*, 2017 WL 5054567, at *3 (S.D.N.Y. Oct. 27, 2017)).) According to the government, the petitioner "impermissibly challenges the IJ's discretionary weighing of evidence" because he argues that the IJ "relied so heavily on" the witness statements in the police report, which should have been "given little weight." (*Id.* (citing ECF No. 1 ¶ 35).)

The petitioner maintains that the Court has jurisdiction pursuant to *Wilkinson v. Garland*, 601 U.S. 209 (2024), in which the Supreme Court "held that discretionary decisions that are tethered to a legal standard are review[ed] as mixed questions of law and fact." (ECF No. 9 at 2.) He also cites a Ninth Circuit case, *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024), in which

6

the court "found that *Wilkinson* compelled the conclusion that an agency finding of 'dangerousness for immigration detention purposes' is a mixed question of law and fact and therefore reviewable as a question of law." (*Id.*)  The petitioner maintains that he is challenging the legal standard that the IJ applied, which he says is a reviewable legal question, not "the balancing of positive versus negative factors for discretion." (*Id.* at 3–4.)

In *Wilkinson*, the petitioner sought, among other things, cancellation of removal based on hardship to his son, a United States citizen.  601 U.S. at 214–15.  The IJ determined that the claimed harm to the petitioner's son did not meet the statutory standard for "exceptional and extremely unusual hardship," and the BIA affirmed the decision.  *Id.* at 215–16.  In determining whether district courts have jurisdiction to review BIA hardship determinations under § 1252(a)(2)(D), the Supreme Court held that the IJ's hardship determination is reviewable, because the "application of a statutory legal standard (like the exceptional and extremely unusual hardship standard) to an established set of facts is a quintessential mixed question of law and fact" and under *Guerrero-Lasprilla* v. *Barr,* 589 U.S. 221, 225 (2020) "such questions are reviewable under § 1252(a)(2)(D)." *Id.*[6]  The Supreme Court did not address whether the same reasoning applies to the jurisdiction-stripping language in § 1226(e).  However, in *Martinez v. Clark*, the Court summarily vacated judgment and remanded to the Ninth Circuit "for further consideration in light of" *Wilkinson.*  144 S. Ct. 1339 (2024).  On remand, the Ninth Circuit applied the *Wilkinson* reasoning to Section 1226(e), finding that "*Wilkinson* compels the conclusion that application of the 'dangerousness' standard is a reviewable mixed question." *Martinez*, 124 F.4th at 783.

---

[6] § 1252(a)(2)(B)(i) "makes unreviewable any 'judgment[s] regarding the granting of [discretionary] relief' under § 1229b's cancellation of removal provision.  Section 1252(a)(2)(D), however, restores jurisdiction to review 'questions of law.'" *Wilkinson*, 601 U.S. at 209–10.

The Second Circuit has not addressed whether, after *Wilkinson,* an IJ's dangerousness determination is reviewable under Section 1226(e). In *Arevalo-Guasco v. Dubois*, which predates *Wilkinson,* the Second Circuit held that it lacked jurisdiction to "review the IJ's factual findings regarding whether [Arevalo-Guasco] is a danger to the community," because it " is not a challenge to the statutory framework, but a challenge to a decision that the IJ has made regarding his detention or release, and § 1226(e) precludes judicial review of the IJ's weighing of evidence and factual findings regarding whether Arevalo-Guasco is a danger to the community." 788 F. App'x 25, 27 (2d Cir. 2019) (citation modified). Similarly, in *Lantigua v. Decker*, the court said that "an assertion that an IJ . . . misread, misunderstood, or misapplied the law in weighing factors relevant to the grant or denial of discretionary relief does not convert what is essentially an argument that the IJ . . . abused their discretion into a legal question." No. 17-CV-4880, 2017 WL 5054567, at *2 (S.D.N.Y. Oct. 27, 2017) (quoting *Guyadin v. Gonzales*, 449 F.3d 465, 468 (2d Cir. 2006)).[7]

For purposes of this decision, the Court assumes without deciding that it has jurisdiction to review the petitioner's claim, and concludes, as explained below, that the plaintiff is not entitled to the relief he seeks. *See Medley v. Decker*, No. 18-CV-7361, 2020 WL 1033344, at *2 (S.D.N.Y. Mar. 3, 2020) ("the Court assumes for purposes of this Order that it may review Mr.

---

[7] Courts in other circuits have reached different conclusions on the application of *Wilkinson* to Section 1226(e). For example, in *Tanlee Chante Grant-Davis, v. Mary De Anda-Ybarra, et al,* the court highlighted the differences between § 1252(a)(2)(D), at issue in *Wilkinson*, and §1226(e). No. 26-CV-54, 2026 WL 823095, at *4 (D.N.M. Mar. 23, 2026); *see id.* (noting that § 1252(a)(2)(D), at issue in *Wilkinson,* is "permissive," while § 1226(e) is "restrictive"). Thus, the court concluded that the language in 1226(e) does not permit review of the IJ's bond denial. *Id.* On the other hand, in *Fabricio Gil Espana, v. Michael Nessinger, et al.,* the court cited *Wilkinson* and *Martinez* and said that "an IJ's determination at a bond hearing that a noncitizen poses a danger to the community is not a decision that is shielded entirely from judicial review, as made clear by recent developments at the Supreme Court and the Ninth Circuit." No. 26-CV-14, 2026 WL 821788, at *5–6 (D.R.I. Mar. 25, 2026). According to the court, "the dangerousness determination is a finding based on the application of a statutory legal standard to an established set of facts, which is a reviewable 'question of law' not barred by Section 1226(e)." *Id.*; *see also Picado v. Hyde*, No. 26-CV-65, 2026 WL 352691, at *5 (D.R.I. Feb. 9, 2026).

8

Medley's so-called motion to enforce" and "need not decide whether . . . 8 U.S.C. § 1226(e) . . . present[s] obstacles to review, because it concludes that Mr. Medley is not entitled to the relief that he seeks").[8]

### III.    The IJ's Decision to Deny Bond

"When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion." *Martinez*, 124 F.4th at 784; *see also United States v. O'Hara,* 960 F.2d 11, 14 (2d Cir. 1992) ("mixed questions of law and fact" are reviewed "for abuse of discretion"). "Under an abuse of discretion standard, we cannot reweigh evidence . . . but can only determine whether the BIA applied the correct legal standard." *Martinez*, 124 F.4th at 784 (citation modified). The petitioner argues that the IJ was wrong to find that the government met its burden of proving dangerousness by a preponderance of the evidence, because the IJ relied only on a police report. (ECF No. 9 at 1; ECF No. 1 ¶ 28.)

The IJ did not abuse her discretion. The IJ considered the evidence, including presentations by both sides, and concluded that the government met its burden of proof by clear and convincing evidence. (*See* ECF No. 7-9 at 210.) The IJ acknowledged that the respondent was "not convicted of a misdemeanor or a felony," but cited the police report, which included the reports of two identified witnesses. (*Id.* at 206–08.) One witness, looking out a window on the second floor, saw the petitioner masturbating in his car.[9] The IJ noted that she was "not the only witness to what occurred." (*Id.* at 214–18.)

> "When the initial witness saw the respondent in his car, [s]he went across the street to the elementary school where there was a security guard. She also saw the respondent with an erect penis in his hand. These are two witnesses who saw a respondent with his erect penis

---

[8] The Court does not address the exhaustion issue because of its decision on the merits.

[9] The petitioner acknowledged that his penis was exposed, but claimed that he was "going to the bathroom" in his car. (*See* ECF No. 7-9 at 228.)

> out of his pants in front of an elementary school. The court finds it implausible that the respondent was going to the bathroom the entire time. That it took the first witness to get downstairs from her house. Walk across the street to get the security guard. And the security guard walked back. And for him to still be going to the bathroom."

(*Id.* at 220–38.) The IJ concluded that "[a] man masturbating in his car in front of an elementary school to this court is clear and convincing evidence of dangerousness." (*Id.* at 244.) The IJ did not "see any evidence of rehabilitation, which it finds extremely concerning." (*Id.* at 246.)

The petitioner argues that the IJ should not have relied on the "bare police report, without a criminal complaint, any corroborating statements, and no proof of conviction." (ECF No. 9 at 1.) At oral argument, the petitioner's counsel made credibility arguments — that the witnesses' statements were inconsistent, and that one witness corroborated the petitioner's claim that he was going to the bathroom. It is undisputed that even under *Wilkinson*, the Court may not review "the factual findings underlying a hardship determination, such as 'factfinding on credibility.'" *Ramirez Lopez v. Bondi*, No. 24-2354, 2025 WL 2945660, at *1 (2d Cir. Oct. 17, 2025) (citing *Wilkinson*, 601 U.S. at 225). Thus, the Court does not review the IJ's factual determinations about witness credibility.

The petitioner also argues that the police report was unreliable because it was uncorroborated, and because the petitioner was not convicted of public lewdness. (ECF No 9 at 8–12.) These arguments are not persuasive. The police report was not based on anonymous reports. It included the statements of two identified informants who saw what the petitioner was doing. Nor is this a case in which the police took no further action, or in which the charges were dismissed. On the contrary, the police arrested the petitioner, he was charged with public lewdness and arraigned on that charge. He ultimately pled guilty to a less serious offense — Disorderly Conduct — an element of which was that he "create[d] a hazardous or physically offensive condition by any act which serves no legitimate purpose." N.Y.P.L. § 240.20(7)

(2014). That charge, while not as serious, has some similarity to the public lewdness charge, which provides that "[a] person is guilty of public lewdness when he or she intentionally exposes the private or intimate parts of his or her body in a lewd manner or commits any other lewd act." N.Y.P.L. § 245.00.

An "IJ has broad discretion to consider 'any information that is available to [her] or that is presented to [her] by the alien or [ICE].'" *Lantigua*, 2017 WL 5054567, at *3 (citing 8 C.F.R. § 1003.19(d)); *see also Jing Wan v. Lynch*, 644 F. App'x 55, 57 (2d Cir. 2016) ("Evidence may be admitted in immigration proceedings 'if it is probative and its use is fundamentally fair.'" (citation omitted)); *Carcamo v. U.S. Dep't of Just.*, 498 F.3d 94, 98 (2d Cir. 2007) ("[P]olice reports and complaints, even if containing hearsay and not a part of the formal record of conviction, are appropriately admitted for the purposes of considering an application for discretionary relief.").[10]

The cases the petitioner cites do not compel a different conclusion. Most of the cases are from other circuits and not binding on the Court.[11] While courts in this circuit caution against

---

[10] The IJ's determination was also consistent with *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006), which set forth the factors that an IJ should consider in making a bond determination. One of those factors is "the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." The IJ "may choose to give greater weight to one factor over others," including that "evidence in the record of serious criminal activity, even if it had not resulted in a conviction, outweighed other factors." *Id.*; *see also Raspoutny v. Decker*, 708 F. Supp. 3d 371, 378 (S.D.N.Y. 2023) ("Under BIA precedent, an IJ has broad discretion in deciding the factors that he or she may consider in custody redeterminations, including evidence of crimes for which Petitioner was not convicted." (citation modified)).

[11] At oral argument, the petitioner cited *Miti v. Moniz*, No. 26-CV-11327, 2026 WL 884639 (D. Mass. Mar. 31, 2026) for the proposition that a police report did not meet the clear and convincing evidence standard. That case, however, was fact-dependent. Indeed, the court declined to announce a bright-line rule about police reports. It found "[t]he mere fact that the assault charge against Petitioner was dismissed does not automatically cancel out its evidentiary value, 'as even charges that do not result in a conviction can form the basis for denial of relief,'" and that "the immigration judge did not necessarily err by considering the fact of arrest and charge, nor by considering the hearsay (and double-hearsay) testimony embodied in the police reports." *Id.* at *6 (citation omitted). Moreover, the facts were much different. Although the witness accused Miti of assaulting him, the court found that the police report "suffer[ed] from an objective lack of corroboration and consistency" because the arresting

giving substantial weight to police reports, there is no bright line rule precluding an IJ from basing a dangerousness determination on a police report. *See e.g.*, *Won Kyeng Kim v. Lynch*, 621 F. App'x 80, 82 (2d Cir. 2015) ("Although the agency is 'hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein,' the IJ did not rely on uncorroborated criminal complaints in Kim's case, but rather considered only criminal complaints that ultimately led to convictions . . . [a]nd . . . the allegations of domestic violence in the criminal complaint . . . were corroborated by the issuance of an order of protection to protect Kim's wife." (citation omitted)). Under these circumstances, the IJ cannot be said to have abused her discretion when she concluded that the petitioner was a danger to the community. *See Medley v. Decker*, No. 18-CV-7361, 2020 WL 1033344, at *3 (S.D.N.Y. Mar. 3, 2020) ("While Mr. Medley may disagree with his resolution of the factual disputes, under these circumstances, the Court cannot conclude that the evidence the Immigration Judge relied upon in reaching his conclusion *could not possibly* establish by clear and convincing evidence that Mr. Medley posed a danger to the community." (citation modified)).[12]

---

officer reported that Miti was the one who called the police, that the witness did not appear to be injured, and did not report any violence when the police arrived. *Id.* at *8.

[12] Because the Court finds that the IJ did not commit clear error, the Court does not address the petitioner's second due process claim. At oral argument, the petitioner's counsel conceded that he could not prevail on that claim if the Court rejected his challenge to the IJ's bond decision.

**CONCLUSION**

For these reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241, ECF

No. 1, is denied.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
April 28, 2026